IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

NICHOLAS TREY DANIEL,

      Plaintiff,

v.                           Case No.: 3:23-cv-00712

TFC J.J. DEAN, III,
West Virginia State Police Trooper,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, Nicholas Trey Daniel ("Plaintiff Daniel"), filed his original pro se complaint pursuant to 42 U.S.C. § 1983, alleging that he was wrongfully arrested and imprisoned by Defendant TFC J.J. Dean, III ("Defendant Dean") and other defendants, namely—Wayne County Prosecutor Deborah Preece, Wayne County Sheriff Rick Thompson, Wayne County Magistrate Billy Dell Runyon, and West Virginia State Police Trooper TFC J.J. Dean III. (ECF No. 1).  This matter was previously assigned to the undersigned's predecessor, Magistrate Judge Cheryl A. Eifert, to consider motions to dismiss which were filed on behalf of Deborah Preece, Richard Thompson and Billy Dell Runyon.  Judge Eifert considered those motions to dismiss and submitted proposed findings of fact and recommendations for disposition to the presiding District Judge Robert C. Chambers, pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 29).  Her recommendations were adopted by Judge Chambers and the claims against Deborah Preece, Richard Thompson and Billy Dell Runyon were dismissed and those parties were

removed pursuant to Judge Chambers' Memorandum Opinion and Order entered March 28, 2024. (ECF No. 31).

Plaintiff Daniel subsequently filed a Motion for Summary Judgment (ECF No. 47). However, Judge Eifert ordered that Plaintiff Daniel's motion was premature and that if be held in abeyance until the parties conducted discovery.  (ECF No. 57).  She further order that the parties were to participate in settlement negotiations, but that if their efforts at settlement negotiations were unsuccessful, the parties were to file dispositive motions on or before October 31, 2024.  (*Id.*)

Pending before the Court are Plaintiff Daniel's renewed Motion for Summary Judgment (ECF No. 71) and Defendant TFC J.J. Dean, III's Integrated Motion for Summary Judgment and Response In Opposition To Plaintiff's Second Motion for Summary Judgment (ECF No. 72) and memorandum in support thereof (ECF No. 73).

For the following reasons, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Defendant Dean's Motion for Summary Judgment and **DENY** Plaintiff Daniel's Motion for Summary Judgment and **DISMISS** this action with prejudice. It is further recommended that Plaintiff Daniel's Motion to Amend (ECF No. 70) his complaint to adjust his demand for relief be **DENIED** as **MOOT**.

## I.    <u>Relevant History</u>

Plaintiff Daniel's complaint alleges he was the victim of a wrongful arrest. According to the complaint, a West Virginia State Trooper, J. J. Dean III ("Defendant Dean"), filed a criminal complaint in November 2021 with the Wayne County Magistrate's Office, charging Plaintiff Daniel with battery and sexual abuse in the third degree. (ECF No. 1 at 1). The criminal complaint identified Plaintiff Daniel by name, date of birth, social security number, and driver's license number. (*Id.*). The criminal complaint was based on

a report filed by Defendant Dean, which stated that the alleged crimes involved a 14-year-old juvenile. (*Id.* at 2). The Wayne County Sheriff's Department arrested Plaintiff Daniel on these charges in July 2022. (*Id.*).

Upon arrest, Plaintiff Daniel was taken to the Sheriff's Department and then to the Western Regional Jail and Correctional Facility ("WRJ"). (*Id.*). The next morning, Plaintiff Daniel was arraigned before a county magistrate. (*Id.*). At the arraignment, Plaintiff Daniel was not "asked about the validity of the charges." (*Id.* at 3). After his arraignment, Plaintiff Daniel was taken back to WRJ, where he was housed with the general population, even though his charges included sex offenses against a minor. (*Id.*). Plaintiff Daniel felt anxious about the heightened risk to his safety. (*Id.*). He remained at WRJ for nearly a week until his preliminary hearing. (*Id.*). At the preliminary hearing, Plaintiff Daniel was told his charges would be increased from misdemeanors to felonies. (*Id.*). Plaintiff Daniel returned to WRJ after the preliminary hearing, where he received a phone call from the Wayne County Prosecutor, Deborah Preece, informing him that he had been wrongfully charged and would be released immediately. (*Id.*).

Plaintiff Daniel was released from jail, but the news of his arrest had already spread across his home county, impacting his personal and professional life. (*Id.* at 4). Plaintiff Daniel alleges that, as a result of the wrongful arrest, he has suffered extreme distress and anxiety, and that the charges have negatively impacted custody hearings, job interviews, other criminal investigations, and his personal relationships. (*Id.*). He states he has become a target of gossip and slander, and that he has suffered both mentally and physically from the trauma inflicted by Defendants. (*Id.*). Plaintiff Daniel requests compensatory damages and punitive damages in his complaint. (*Id.* at 5).

3

As stated above, the only remaining defendant in this matter is Defendant Dean. Plaintiff Daniel's complaint asserts a claim against Dean under 42 U.S.C. § 1983, contending that Plaintiff "was wrongfully arrested and detained based on the negligence and deliberate indifference shown by [Defendant Dean]." (ECF No. 1 at 4)

## II.    <u>Standard of Review</u>

Both Plaintiff Daniel and Defendant Dean seek summary judgment in their favor. Summary judgment is proper under Fed. R. Civ. P. 56 when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. The party moving for summary judgment bears the initial burden of showing an absence of evidence that demonstrates the existence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

If the moving party meets this burden, then the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322, n.3. The nonmoving party must do more than rely upon the allegations or the denial of allegations contained in his pleading to defeat a motion for summary judgment; instead, he must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Concrete evidence includes "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

4

materials." Fed. R. Civ. P. 56(c)(1)(A). The court must not resolve disputed facts, nor weigh the evidence. *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1239 (4th Cir. 1995). Instead, the court must accept as true the facts asserted by the nonmoving party and review the evidence "draw[ing] all justifiable inferences" in its favor. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991).

Even still, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009), (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Thus, while any permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co*, 475 U.S. at 587, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (citation omitted).

## II.    Discussion

### 1.    Plaintiff's Claims for "Wrongful Arrest" or "Wrongful Detainment" Are Barred by the Applicable Statute of Limitations

As previously recognized by this Court, "[a] plaintiff must file a Section 1983 action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective State's statutes of limitation." *Montgomery v. Reed*, No. 2:24-00149, 2024 WL 3876522, at *5 (S.D.W.Va. July 24, 2024) (citing *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573 (1989)), adopted by *Montgomery v. Reed*, 2024 WL 3868242 (S.D.W.Va. Aug. 19, 2024). "The Fourth Circuit

has recognized that 'in the absence of any state statute of limitations specifically applicable to suits to redress a violation of civil rights, the West Virginia limitation on personal injury actions applies." *Id.* (quoting *McCausland v. Mason Cnty. Bd. of Ed.*, 649 F.2d 278 (4th Cir. 1981), cert denied, 454 U.S. 1098, 102 S.Ct. 671 (1981)). Pursuant to West Virginia law, "[t]he applicable period of limitations for a claim of false imprisonment is one-year." *Id.* (citing *Wilt v. State Auto. Mut. Ins. Co.*, 203 W.Va. 165, 506 S.E.2d 608, 613 (1998) and *Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W.Va. 588, 244 S.E.2d 321 (1978)).

While the limitation period is governed by state law, "the question of when a cause of action accrues is answered according to federal law." *Id.* (citing *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996). "[F]or a Section 1983 action, 'a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice—e.g., by the knowledge of the fact of injury and who caused it—to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim.'" *Id.* (citing *Nasim v. Warden, MD House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc), cert denied, 516 U.S. 1177, 116 S.Ct. 1273 (1996). "Accrual of a claim does not await awareness by the plaintiff that his injury was negligently inflicted." *Nasim*, 64 F.3d at 955 (internal quotation omitted). "A Section 1983 claim for false arrest and false imprisonment accrues when the claimant is detained pursuant to the legal process." *Id.* (citing *Wallace v. Kato*, 594 U.S. 384, 127 S.Ct. 1091, 1100 (2007)). "Generally, an individual's arraignment date is the date they are detained pursuant to legal process." *Id.*

Pursuant to West Virginia law, Plaintiff Daniel had one year to file a claim for "false arrest" or "false imprisonment." In this case, Plaintiff Daniel was arrested in and put "on notice" of a potential claim in July of 2022. He was "heard before the Wayne County

Magistrate's Office via telephonic and video connection and arraigned for the [sexual abuse and battery] charges" the morning after his arrest. (ECF No. 1 at ¶ 8). Althgouh the statute of limitations in this matter expired in July 2023, Plaintiff did not file this action until November 1, 2023. Thus, Plaintiff Daniel's claim for "wrongful arrest" or "wrongful detainment" was untimely filed and should be dismissed as a matter of law. *See, e.g., Montgomery*, 2024 WL 3876522, at 6 (holding that, in a 42 U.S.C. § 1983 action, "Plaintiff's false arrest claims against [the defendant] should be dismissed because the one-year statute of limitations ha[d] run."); *Roberts v. Maston*, No. 2:23-00019, 2024 WL 714943, at *5 (S.D.W.Va. Jan. 26, 2024), adopted by *Roberts v. Maston*, 2024 WL 712860 (S.D.W.Va. Feb. 21, 2024) (dismissing claims of false arrest and false imprisonment by "applying the West Virginia one-year statute of limitation together with the federal standard of accrual" and "find[ing] that [the plaintiff's] cause of action for false arrest expired on January 18, 2009, one-year from the date [the plaintiff] was detained pursuant to legal process").

In his response to Defendant Dean's motion for summary judgment, Plaintiff Daniel contends that his complaint also asserts claims for "slander," "mental anguish," and "malicious prosecution," and that as such his complaint should be considered timely as to those claims. (ECF No. 74). Based upon applicable law, Plaintiff Daniel's assertions are unfounded.

Plaintiff Daniel contends that his name was slandered by being labeled a "Sex Offender" on the WRJ website and on social media. (ECF No. 74). However, Plaintiff Daniel's Complaint clearly indicates that his action is being brought "pursuant to 42 U.S.C. § 1983." (ECF No. 1). Plaintiff Daniel does allege in his complaint "scandalous charges" and "damage to his personal reputation," but slander, libel and/or defamation

are not specifically pled.  (ECF No. 1 at 4).  In any event, as the Fourth Circuit has noted, "the United States Constitution does not afford a remedy for reputational injury alone." *Aylor v. Town of Culpeper*, 103 F.3d 116 (4th Cir. Nov. 20, 1996) (Unpublished). In reliance upon *Aylor*, federal courts have noted that "[n]o federal right of actions exist under § 1983" for defamation, libel, or slander.  *Newsome v. Floyd*, No. 4:23-cv-03968, 2024 WL 1152614, (D.S.C. Mar. 18, 2024). Furthermore, slander claims, like "wrongful detainment" and "wrongful arrest" claims, are subject to a one-year statute of limitations, which Plaintiff missed. See *Greene v. Putnam Cnty. Comm'n*, No. 3:21-0520, 2022 WL 16859755 (S.D.W.Va. Nov. 10, 2022). Therefore, even, if the Court liberally construes Plaintiff Dean's Complaint to allege "slander," that claim is barred by the statute of limitations.

Likewise, Plaintiff Daniel's claim of "mental anguish" in his response to the motion for summary judgment fails as a matter of law. "Mental anguish" is not a separate cause of action. It is a form of damages which is recoverable for some tort claims. Even if the Court were to construe Plaintiff Daniel's assertion of "mental anguish" as a claim for "intentional infliction of emotional distress," Plaintiff Daniel's complaint fails to sufficiently plead such a claim, which is a state-law claim that does not arise under 42 U.S.C. § 1983.  (ECF No. 1).  Plaintiff Daniel's Complaint clearly states that this action is brought "pursuant to 42 U.S.C. § 1983." and the "Statement of Complaint" is devoid of reference to "mental anguish" or "emotional distress." (*Id.*). Based upon a clear reading of Plaintiff Daniel's Complaint, he did not assert a claim for mental anguish or intentional infliction of emotional distress.

The final contention in Plaintiff Daniel's response to the motion for summary judgment is that his complaint asserts a claim for "malicious prosecution."   However, as

this Court has previously acknowledged, malicious prosecution claims also carry a one year statute of limitation. *See Young v. Lacy*, No. 1:17-03633, 2020 WL 4251798, (S.D.W.Va. July 24, 2020)  In Young, the Court adopted "the PF&R's findings [by Magistrate Judge Cheryl A. Eifert] as to West Virginia statute of limitations provisions corresponding to each claim, as follows: . . . ii) false arrest and false imprisonment claims are subject to one-year statutes of limitations; iii) malicious prosecution claim is subject to a one-year statute of limitations . . . .". *Id.* at 4.  Thus, Plaintiff Daniel's claims of false imprisonment, false arrest and malicious prosecution are all time barred because they were not timely filed.

## 2. Defendant Dean is Entitled to Qualified Immunity, Even if Plaintiff Daniel's Claims for Malicious Prosecution are Considered Timely Filed

"[A] malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." *Lambert v. Williams*, 222 F.3d 257, 261 (4th Cir. 2000). "To state such a claim, the plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in the plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012), cited by *English v. Clarke*, 90 F.4th 636, 647 (4th Cir. 2023). "Not every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under 42 U.S.C. § 1983." *Thompson v. Prince William Cnty.*, 753 F.2d 363, 364 (4th Cir. 1985).

In this case, there is no question that Plaintiff Daniel was not the perpetrator of the alleged sexual assault that gives rise to this case.  However, in order to state a cognizable

"malicious prosecution" claim against Defendant Dean, Plaintiff Daniel must show that Dean caused "a seizure of the plaintiff pursuant to a legal process unsupported by probable cause." *Evans*, 703 F.3d at 647.

As recognized by the Fourth Circuit, "[r]easonable law enforcement officers are not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'" *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (quoting *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir.1991)). And, "[i]t's surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker." *Torchinsky*, 942 F.2d at 262 (citing *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984)). According to the Fourth Circuit, "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." *Id.* In this case, "the victim identified the suspect as Trey Daniels and provided information regarding his approximate age and approximate geographic location." (ECF No. 73-1). With this information, Dean performed a driver's license search and found only one individual possessing a similar name, age, and location—Plaintiff.  (ECF No. 73-3).

During Plaintiff Daniel's deposition, he acknowledged the fact that he went by the name "Trey Daniels" in Wayne County, which is the name of the assailant provided by the victim to law enforcement. (ECF 73-2).  Plaintiff also acknowledged that he understood how a mix-up such as his could happen:

> Q: And let me see if I understand what I think you're trying to tell me. You understand how the police officers could've thought that you were the Trey Daniel that had been accused of this crime, but you think if they had done some more investigative work, they could've figured out that you weren't; is that what you're saying.

A: Yes. . . .

*Id.* Further, as cited in support of Defendant Dean's motion for summary judgment, Plaintiff Daniel testified at the conclusion of his deposition that he merely wanted Dean to take his investigation "further." *Id.*

Not taking the investigation "further," however, does not state a cognizable claim for malicious prosecution. As stated herein, the Fourth Circuit has held that "[i]t is [] plain that an officer is not required to 'exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt before probable cause is established.'" *Miller*, 475 at 630 (4th Cir. 2007) (internal citations omitted). "An investigation need not be perfect, but an officer who intentionally or recklessly puts lies before a magistrate, or hides facts from him, violates the Constitution unless the untainted facts themselves provide probable cause." *Id.*

In this case, Plaintiff Daniel does not assert that Defendant Dean lied to or misled the magistrate while presenting the Criminal Complaint which led to the issuance of a warrant against Plaintiff Daniel. Plaintiff Daniel's allegations against Defendant Dean stem from his allegedly imperfect investigation, but the facts given to Defendant Dean and presented before the magistrate provided sufficient probable cause for the issuance of a warrant and Plaintiff Daniel's arrest. Thus, any malicious prosecution claim against Defendant Dean fails as a matter of law.

Furthermore, based upon the uncontested facts of this matter, Defendant Dean had qualified immunity and is entitled to summary judgment. As stated by the Fourth Circuit, "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." *Torchinsky*, 942 F.2d at 264 (1991). "Because

qualified immunity is designed to shield officials not only from ultimate liability but also from the hardships of litigation itself, 'the immunity shield is necessarily more protective than is the defense on the merits.'" *Id.* (quoting *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990)). "This broader protection is reflected in a test of 'objective reasonableness' for entitlement to qualified immunity." *Id.* at 261 (citing *Malley v. Briggs*, 475 U.S. 335, 344 (1986)). "[T]he qualified immunity reasonableness determination is based on evidence reasonably available to the police officer and in light of any exigencies present. *See Pritchett*, 973 F.2d at 312–13. Importantly, this inquiry must not result in a 'second-guessing' of the officer's actions 'with the benefit of 20/20 hindsight.'" *Brown v. Wiita*, 7 Fed. App'x 275, 278 (4th Cir. 2001) (quoting *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994))." In determining whether [an officer] is entitled to qualified immunity, the guiding principle is that 'only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.'" *Torchinsky*, 942 F.2d at 264 (citing *Malley*, 475 U.S. at 344).

In this case, Defendant Dean's actions were objectively reasonable in light of the evidence at his disposal, and therefore, Defendant Dean is entitled to qualified immunity on Plaintiff Daniel's claims in this action. Here, Defendant Dean presented the evidence at his disposal to a magistrate, who determined that probable cause existed to issue a warrant for Plaintiff Daniel's arrest. While "obtaining an arrest warrant does not provide per se evidence of objective reasonableness," it can "provide additional support for [an officer's] claim that he acted with objective reasonableness." *Id.* at 262 (citing *Malley*, 475 U.S. at 345–46 and *Massachusetts v. Sheppard*, 468 U.S. 981, 988-91, 82 L. Ed. 2d 737, 104 S. Ct. 3424 (1984)). The presumption of reasonableness attached to obtaining a warrant can be rebutted where 'a reasonably well-trained officer in [Dean's] position

12

would have known that his [application] failed to establish probable cause and that he should not have applied for the warrant." *Id.* (citing *Malley*, 475 U.S. at 345). As explained above, any reasonable officer in Defendant Dean's position, could have similarly concluded that probable cause existed for filing a Criminal Complaint against Plaintiff Daniel given the victim's identification of an assailant with Plaintiff Daniel's similar name and age and Defendant Dean's subsequent search of the driver's license database. Thus, Defendant Dean's decision to present a magistrate with a Criminal Complaint was objectively reasonable in light of the information available to him at the time.

Nonetheless, "[e]ven if the existence of probable cause were a close question, the 'qualified immunity standard gives ample room for mistaken judgments.'" *Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012) (quoting *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011)). In *Durham*, the Fourth Circuit analyzed the applicability of qualified immunity in a "case of mistaken identity." *Durham*, 690 F.3d at 185. There, a police officer worked with a confidential informant who disclosed to the officer that he intended to buy drugs from a man named "Michael Dwayne Durham." *Id.* Working with the Task Force office, the officer received a social security number and Big Stone Gap post office address associated with the name "Micheal Dwayne Durham." *Id.* Neither the Task Force nor the officer "secure[d] a photo of the drug dealer." *Id.* Utilizing the social security number provided to him, the officer provided Mr. Durham's prior criminal history. *Id.* at 186. The officer conducted two more drug buys, wherein the confidential informant repeated the name "Michael Dwayne Durham," then advised the task force to indict Mr. Durham. *Id.* "From that point on, [the officer] had no involvement in Durham's arrest and prosecution." *Id.* A grand jury later returned three indictments against Mr. Durham, and he remained in jail for more than three months. *Id.* The prosecutor eventually learned

that Mr. Durham was incorrectly identified after Mr. Durham's counsel presented phone records to show that the wrong person had been arrested, and the prosecutor dismissed the three indictments. *Id.* at 187. The *Durham*-plaintiff then filed a civil action against the officer (and others), alleging, *inter alia*, 42 U.S.C. § 1983 and state-law malicious prosecution claims. The officer moved for summary judgment, which was granted.

As the Fourth Circuit noted in Durham, "'[f]or probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required.'" *Id.* at 190 (quoting *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002)). The Fourth Circuit further found that the *Durham*-officer had "ample evidence" (including the informant saying the name "Michael Dwayne Durham" three times, the plaintiff having a local address and a Tennessee driver's license, and the plaintiff having prior drug offenses. *Id.*

In this matter, the evidence relied upon by Defendant Dean in the instant case is analogous. The minor victim identified her assailant as "Trey Daniels," a name Plaintiff Daniel admits to going by. (ECF No. 73-2). Upon searching the driver's license database using this information, the only person with a similar name and age to that provided by the minor victim was Plaintiff Daniel. Finally, like the *Durham*-Plaintiff, Plaintiff Daniel admitted to having a long criminal history. (ECF No. 73-2). Thus, based upon the evidence in his possession at the time, a reasonable officer could have similarly concluded that Plaintiff Daniel committed the alleged offense and that probable cause existed for the Criminal Complaint.

Although "[i]t will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, . . . judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence

of probable cause. Certainly[,] in hindsight, one wishes this arrest had not occurred, but with hindsight, it becomes far easier to portray any person charged with making a close discretionary decision in a pejorative light." *Torchinsky*, 942 F.2d at 264 (1991). "A society that expects police officers to provide protection must afford them in turn some protection from lawsuits. If immunity is lost in every case of mistaken arrest, then many a perpetrator of violent crime will go unapprehended." *Id.*

As in these other cases, it is certainly regrettable that Plaintiff Daniel was "arrested for a crime he clearly did not commit. However, not every unfortunate incident gives rise to § 1983 liability against a municipality or its officials. The police must be held to standards of reasonableness, not to standards of perfection." *Id.* Defendant Dean acted reasonably, and thus, he is entitled to qualified immunity.  As such, summary judgment should be granted in his favor.

## IV.    Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings herein and **RECOMMENDS** that the motion for summary judgment, filed by Defendant Dean be **GRANTED**, that Plaintiff Daniel's motion for summary judgment be **DENIED**, and that this matter be **DISMISSED** and **REMOVED** from the docket.  Plaintiff Daniel's remaining motion to amend his complaint as to damages should also be **DENIED** as **MOOT**.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail)

from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Reeder.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED**: January 8, 2025



_____
Joseph K. Reeder
United States Magistrate Judge